IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH WAGONER,

    Plaintiff,                          No. CIV S-05-01279 ALA P

    vs.

CAROL DALY, et al.,

    Defendants.              <u>ORDER</u>

_____/

      Plaintiff Keith Wagoner is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action, pursuant to 42 U.S.C. § 1983. Mr. Wagoner was convicted of first degree murder and sentenced to 25 years-to-life in state prison. In his first amended complaint, Mr. Wagoner alleges that the State of California, under Governor Schwarzenegger, has a covert policy of systemically denying parole to murderers. Mr. Wagoner also alleges that Defendant Daly violated his due process rights by requesting an updated psychological report upon the completion of his 2004 parole suitability hearing. Mr. Wagoner further argues that Defendants Daly and Harmon violated his due process rights by denying him parole based on CDC-115.[1]

      On February 9. 2007, Defendants Daly, Harmon, and Schwarzenegger moved for

---

[1] CDC-115 refers to the California Department of Corrections (CDC) form 115, Rules Violation Report.

-1-

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants argue that: (1) Mr. Wagoner lacks Article III standing to seek prospective injunctive relief; (2) Defendants Daly and Harmon are absolutely immune from suit; and (3) Mr. Wagoner lacks standing to seek damages from Defendants Daly and Harmon. We grant the motion for summary judgment.

I

In 1988, Mr. Wagoner was convicted of first degree murder and sentenced to 25 years to life. He was not eligible for parole until November 2002. On May 20, 2004, Mr. Wagoner was denied parole until at least 2007. The psychological report used at the hearing was based on a clinical assessment conducted in August 2001. At the parole hearing, Mr. Wagoner's attorney indicated that the psychological report did not contain recent information which was supportive of release. He requested an updated psychological evaluation for his next parole hearing. Accordingly, Defendants Daly and Harmon ordered an updated psychological evaluation.

Mr. Wagoner then filed habeas corpus petitions in the Superior Court of California for the County of Los Angeles and the United States District Court for the Central District of California. Both courts found that the evidence presented at the May 20, 2004 parole hearing was adequate to support the denial of Mr. Wagoner's parole.

II

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted in favor of a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A party's motion for summary judgment must be granted "after adequate time for discovery and upon motion . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted).

Where the party resisting a motion for summary judgment is *pro se*, the court "must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that allegations contained in a pro se plaintiff's verified pleadings must be considered as evidence for purposes of summary judgment).

### III

#### A

Mr. Wagoner contends that the parole hearings for murderers are predetermined. Specifically, he claims that Governor Schwarzenegger and the Board of Prison Terms (BPT) have engaged in a systemic policy of denying parole to murderers . Mr. Wagoner seeks prospective injunctive relief to prevent Defendants from applying this policy to his future parole hearings. However, Mr. Wagoner lacks standing to obtain injunctive relief because he has not presented sufficient evidence that the board has a policy which poses a concrete and particularized threat of irreparable harm.

"California's parole scheme gives rise to a protected liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). "The scheme 'creates a presumption that parole release will be granted' unless the statutorily defined determinations are made." *Id.*

(citations omitted). Accordingly, prisoners have a due process right to a fact-finder who has not predetermined the outcome of the hearing. *See O'Bremski v. Maas*, 915 F.2d 418, 422 (9th Cir. 1990) ("In discussing the minimum requirements of due process for parole revocation hearings, the Supreme Court included a 'neutral and detached' hearing body such as a traditional parole board.") (citations omitted).

There are two distinct components to the standing inquiry when a plaintiff requests prospective injunctive relief. First, in order to satisfy the constitutional requirements for standing, the plaintiff must demonstrate a credible threat of future injury which is sufficiently concrete and particularized to meet the "case or controversy" requirement of Article III . *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Second, to establish an entitlement to injunctive relief, the plaintiff must allege not only a likelihood of future injury, but also show an imminent threat of irreparable harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111(1983).

The imminent threat showing is a separate jurisdictional requirement, arising independently from Article III , that is grounded in the traditional limitations on the court's power to grant injunctive relief. *Id.* (the preconditions for equitable relief, including the requirement that the plaintiff face a real and immediate risk of personal harm, should not be slighted); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir.1999) (the court may not exercise jurisdiction over a suit for equitable relief unless the plaintiff demonstrates a likelihood of imminent and irreparable injury, a necessary prerequisite for such relief). Although a past injury presumably affords a plaintiff standing to claim damages, it "does nothing to establish a real and immediate threat that he would again suffer similar injury in the future." *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 210-11 (1995). "[A]bsent a threat of immediate irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." *Hodgers-Durgin*, 199 F.3d 1037, 1042 (9th Cir. 1999). A plaintiff must demonstrate that the threat of reoccurrence is real, rather than a speculative possibility." *Lyons*, 461 U.S. at 109.

In the present case, Mr. Wagoner lacks standing to obtain injunctive relief because he has not presented sufficient evidence that the board has a policy which poses a concrete and particularized threat of imminent, irreparable harm.  Mr. Wagoner cites to *Coleman v. Board of Prison Terms,* 2005 WL 4629202 (E.D. Cal. Dec, 2, 2005), in support of his argument.  In *Coleman*, the court found that a habeas petitioner before it had "present[ed] a convincing case that a blanket policy against parole for murderers" affected the fairness and impartiality of the Board during his 1995 hearing.  *Id.* at *2.  There, the district court found that under Governors Wilson and Davis there existed a sub rosa policy that all murderers would be found unsuitable for parole.  *Id*.  *Coleman* is distinguishable from the instant case because there, the petitioner presented a substantial record of unrefuted evidence which showed such a policy existed. The evidence included:

> sworn testimony [from former Board members] that the policy was enforced by (1) appointing Board members less likely to grant parole and more willing to disregard their statutory duty; (2) removing Board members more likely to grant parole; (3) reviewing decisions finding a prisoner suitable and setting a new hearing before a different panel; (4) scheduling rescission hearing for prisoners who had been granted a parole date; (5) re-hearing favorable rescission proceedings and hand-picking panels to ensure the desired outcome; (6) panel members agreeing upon an outcome in advance of the hearing; and (7) gubernatorial reversal of favorable parole decisions.

*Id*.  In addition, statistics were presented that only one prisoner out of 4,800 was released on parole.  Further, there was evidence Governor Davis himself stated he would deny parole to all murderers. When asked about whether extenuating circumstances should be a factor in murder sentences, he stated: "No. Zero ... They must not have been listening when I was campaigning .... If you take someone else's life, forget it." *Id. (citing In re Rosenkrantz,* 29 Cal.4th 616, 684 (2003)).

Here, when the Parole Board denied Mr. Wagoner's parole, Governors Davis and Wilson

were no longer in office.  "The actions and statements of former governors cannot be imputed to the present governor." *Morton v. Mendoza-Powers*, 2007 WL 2688850, at *8 (E.D.Cal. Sep.13, 2007) (holding that there was no evidence that the parole board had a predetermined policy of denying parole to prisoners under Governor Schwarzenegger).  In *Morton*, the court determined that the petitioner did not present sufficient evidence of a predetermined policy to deny parole under Governor Schwarzenegger.  The court reasoned: "Petitioner points to computer print-outs submitted by Respondent which purportedly demonstrates that approximately seven (7) persons from 2002 to 2006 were initially granted parole at their first hearing.  This evidence is insufficient for this Court to find that there exists a blanket policy mandated by the governor which requires parole denial at the initial hearing." *Id.* at *7.

Similar to the petitioner in *Morton*, Mr. Wagoner has not presented sufficient evidence that systemic policy to deny parole existed under Governor Schwarzenegger.  As support for Mr. Wagoner's contention that such a policy existed, he offers statistics as to the percentage of prisoners actually paroled each year under Governor Schwarzenegger, from 1998-2006.  Mr. Wagoner states that the percentage of inmates granted parole has not increased since Schwarzenegger has taken office, and therefore the same "no parole" policy exists.  However, Mr. Wagoner's dissatisfaction with the number of parolees granted parole does not give rise to a constitutional violation.   Unlike the petitioner in *Coleman*, Mr. Wagoner does not set forth the sufficient evidence to support his claim of a pervasive policy.  Therefore, without more evidence, Mr. Wagoner's assertion of a blanket policy is pure speculation, as would be any injury suffered as a result of this alleged policy.

**B**

Additionally,  Mr. Wagoner alleges that Defendants Daly and Harmon made procedural errors while serving on a Parole Board panel which denied him parole.  Specifically, Mr. Wagoner alleges that Defendant Daly violated his due process rights by erroneously requesting an updated psychological report.  Mr. Wagoner seeks an injunction and declaratory relief,

preventing the Parole Board from compelling him to take an updated psychological report. Mr. Wagoner also argues that Defendants Daly and Harmon violated his due process rights by using a CDC-115 to extend his term. Mr. Wagoner argues that: (1) the CDC-115 had no rational nexus to parole unsuitability; and (2) Mr. Wagoner never had a violent CDC-115, or any CDC-115 that could be considered as a rational reason for parole denial. Mr. Wagoner seeks declaratory and injunctive relief preventing Defendants from using CDC-115 to deny parole. Defendants Daly and Harmon argue that Mr. Wagoner's claims must fail because they are absolutely immune from suit.

Parole board members are entitled to absolute immunity when they perform "quasi-judicial" functions. *Swift v. State of California*, 384 F.3d 1184, 1189 (9th Cir.2004); *Anderson v, Boyd*, 714 F.2d 906, 909-10 (9th Cir. 1983). Thus, Parole Board officials are entitled to absolute quasi-judicial immunity for decisions "to grant, deny, or revoke parole" because these tasks are "functionally comparable" to tasks performed by judges. *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir. 1981); *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir.1991) (holding *Sellars* immunity encompasses actions "taken when processing parole applications"). Absolute immunity has also been extended to parole officials for the "imposition of parole conditions" and the "execution of parole revocation procedures," tasks integrally related to an official's decision to grant or revoke parole. *Anderson*, 714 F.2d at 909.

"[A]n official derives the appropriate degree of immunity not from his or her administrative designation but by the function he or she performs." *Id.* at 908. Parole officials are not "entitled to absolute immunity for conduct not requiring the exercise of quasi-judicial discretion." *Id.* at 909. "There is no reason to clothe actions taken outside an official's adjudicatory role with the absolute immunity tailored to the demands of that role ." While parole officials "may claim absolute immunity for those actions relating to their responsibility to determine whether to revoke parole, their immunity for conduct arising from their duty to supervise parolees is qualified." *Id.* at 910; *see also Sepulveda v. Ramirez*, 967 F.2d 1413,

1415-16 (9th Cir.1992) (holding that a parole officer was not entitled to qualified immunity for depriving a woman of her clearly established due process right to bodily privacy by entering a bathroom stall and watching her urinate). Thus, parole officials "may be accorded one degree of immunity for one type of activity and a different degree for a discrete function." *Anderson*, 714 F.2d at 910.

Here, Defendant Daly states that the updated psychological report was ordered because: (1) the 2001 report would not have been an accurate reflection of Mr. Wagoner's condition in 2007; (2) they wanted all of the evidence for Mr. Wagoner's next parole hearing to be timely and accurate; and (3) Mr. Wagoner's attorney requested an updated psychological report. Because Mr. Wagoner's attorney requested the updated psychological report and it was necessary in making an accurate determination of Mr. Wagoner's parole, this action is subject to quasi-judicial immunity. Thus, in ordering an updated psychological report, Defendant Daly is absolutely immune from suit.

Additionally, Defendants Daly and Harmon are entitled to absolute immunity in using the CDC-115 to extend Mr. Wagoner's term. In using the CDC-115, Defendants were determining whether "to grant, deny, or revoke parole." *Sellars*, 641 F.2d at 1303. Thus, in performing a task "functionally comparable" to a task performed by a judge, Defendants are absolutely immune from suit. *Id.*

Therefore, IT IS ORDERED that Defendant's February 9, 2007, motion for summary judgment is GRANTED.

/////

DATED: February 22, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

-8-